UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY and ILLINOIS EMCASCO INSURANCE COMPANY, | No. 1:19-cv-00544-DAD-JLT |
| Plaintiffs, | <u>ORDER GRANTING PLAINTIFFS AND COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u> |
| v. | |
| NORTH AMERICAN SPECIALTY FLOORING, INC., SPORTS SURFACING, INC., S.C. ANDERSON, INC., and KOSTER AMERICAN CORPORATION dba KOSTER USA, | (Doc. No. 31) |
| Defendants. | |
| NORTH AMERICAN SPECIALTY FLOORING, INC. and SPORTS SURFACING, INC., | |
| Counter-Claimants, | |
| v. | |
| EMPLOYERS MUTUAL CASUALTY COMPANY and ILLINOIS EMCASCO INSURANCE COMPANY, | |
| Counter-Defendants. | |

/////

/////

This matter is before the court on the motion for summary judgment brought by plaintiffs and counter-defendants Employers Mutual Casualty Company and Illinois Emcasco Insurance Company (collectively, "EMC"[1]). (Doc. No. 31.) A hearing on the motion was held on December 3, 2019. Attorney Lisa Darling-Alderton appeared telephonically on behalf of EMC, and attorney Arthur Grebow appeared telephonically on behalf of defendants and counter-claimants North American Specialty Flooring and Sports Surfacing, Inc. (collectively, "Sports Surfacing"[2]). Having considered the parties' briefs and oral arguments, and for the reasons set forth below, the court will grant EMC's motion for summary judgment.

## BACKGROUND

In this declaratory relief action EMC seeks a declaration from this court that, as a matter of law, the damages sought against Sports Surfacing by a third-party in an underlying state court action are not covered under the insurance policies EMC issued to Sports Surfacing, and that EMC therefore has no duty to defend or indemnify Sports Surfacing in that underlying state court action. (*See* Doc. No. 2.) Sports Surfacing counter-claims that EMC has a duty to defend and indemnify it in the underlying action pursuant to the insurance policies that EMC issued it and seeks a declaration stating as much. (*See* Doc. No. 16.)

The material facts of this case are undisputed and, as relevant to the pending motion, are set forth below.

---

[1] As confirmed at the December 3, 2019 hearing on the pending motion, plaintiff Illinois Emcasco Insurance Company is a subsidiary of plaintiff Employers Mutual Casualty Company. Some of the insurance policies at issue here were issued by Illinois Emasco Insurance Company, and others were issued by Employers Mutual Casualty Company. As further confirmed at the December 3, 2019 hearing, there is no material difference between the policies issued by Illinois Emasco Insurance Company and those issued by Employers Mutual Casualty Company. Accordingly, the court will refer to these two plaintiffs collectively as "EMC" and the policies issued by them as the "EMC insurance policies."

[2] According to the complaint in this action, as well as the complaint filed in the underlying state court action, North American Specialty Flooring formerly did business as "Sports Surfaces." (*See* Compl. at 12–13; 31-2 at 444.) As confirmed at the December 3, 2019 hearing on the pending motion, "Sports Surfaces" is the same entity as defendant Sports Surfacing, Inc. Accordingly, the court will refer to defendants North American Specialty Flooring and Sports Surfacing, Inc. collectively as "Sports Surfacing."

2

**A.	The Relevant Parties.**

Defendant Sports Surfacing is a contractor that "install[s] flooring and related products, including rubber sports flooring." (Doc. No. 31 at 7.) EMC provided insurance coverage to Sports Surfacing under various insurance policies (collectively, the "EMC insurance policies"). (Doc. No. 2 ("Compl.") at 2–3.) EMC is moving for summary judgment against each named defendant, but only Sports Surfacing has opposed the motion. Other named defendants—such as defendants S.C. Anderson, Inc. ("Anderson") and Koster American Corporation dba Koster USA ("Koster")—do not oppose the pending motion for summary judgment. Moreover, several entities who were initially named as defendants in this action have been dismissed after agreeing to be bound by the outcome of this litigation. (*See* Doc. Nos. 23, 27.) Included amongst that group are Roy's Flooring, Inc. and Jose Roy Garcia, formerly dba Roy's Flooring, (collectively "Roy's Flooring") who were subcontracted into the project that gave rise to the underlying lawsuit, as well as Navigators Insurance Company ("Navigators"), an insurance company that insured Roy's Flooring. (Compl. at 12–13; Doc. No. 31-2, Ex. A) (Stipulation of Facts and Evidence Admissible for Cross Motions for Summary Judgment[3] ("UF") at ¶¶ 22, 23; Doc. Nos, 23, 27.)

**B.	The Facts Giving Rise to the Underlying State Court Action.**

On May 15, 2017, defendant Anderson, a general contractor, entered into a written contract with California State University, Bakersfield ("CSU Bakersfield") for a construction project referred to by the parties as the "Student Recreation Center project." (UF at ¶ 22; *see also*

---

[3] The parties have filed a "Stipulation of Facts and Evidence Admissible for Cross Motions for Summary Judgment." (*See* Doc. No. 31-2, Ex. A.) However, only EMC has moved for summary judgment, and no other such motion is pending before the court in this action. Nevertheless, the parties agree that the facts that they have stipulated to are undisputed. (Doc. No. 31-2 at 6.) Accordingly, the court construes the parties' filing as a statement of undisputed facts and will hereafter to refer to that filing by the following abbreviation, "UF." Moreover, EMC has attached to the pending motion a separate statement of undisputed facts (*see* Doc. No. 31-1) as well as a "Compendium of Evidence" in support of the pending motion (*see* Doc. No. 31-2, Exs. 1–23.) In its opposition, defendant Sports Surfacing does not dispute this evidence. Accordingly, the court construes the facts contained within EMC's separate statement of undisputed facts and "Compendium of Evidence" to be undisputed facts for the purposes of resolving the pending motion.

3

Doc. No. 31-2 at 259.) On June 18, 2007, Anderson entered into a written subcontract with Roy's Flooring, whereby the latter agreed to "provide all labor, material, and equipment necessary to furnish and install wood flooring, rubber flooring, and sports flooring" for the Student Recreation Center project. (UF at ¶ 23.) At some point prior to the rubber flooring being installed in the Student Recreation Center's fitness room, it was discovered that excessive moisture was passing through the concrete slab upon which the rubber flooring was to be installed, requiring the application of a concrete sealant. (*Id.* at ¶ 25.) On January 8, 2009, Roy's Flooring entered into a written subcontract with defendant Sports Surfacing, whereby Sports Surfacing agreed to obtain and apply a specific sealant produced by defendant Koster. (*Id.* at ¶ 24.) Roy's Flooring subcontracted with Sports Surfacing because Roy's Flooring was not a "certified" installer of Koster products and Sport Surfacing asserted that it had the proper certification. (*Id.*; *see also* Doc. No. 31-2 at 260.) On July 15, 2009, Anderson and Roy's Flooring executed a "change order," whereby Roy's Flooring agreed to "provide all labor, material, and equipment necessary to install moisture sealer in" the fitness room and running track at the Student Recreation Center. (UF at ¶ 23.) Sports Surfacing installed a concrete sealant product manufactured by Koster to the concrete slab and then installed the rubber flooring. (*Id.* at ¶ 25.) The Student Recreation Center project was completed on or about August 12, 2009. (*Id.* at ¶ 26.)

In or around February 2016, CSU Bakersfield notified defendant Anderson that the rubber flooring in the Student Recreation Center's fitness room had failed and needed to be removed and replaced. (*Id.* at ¶ 27.) Thereafter, representatives from CSU Bakersfield, Anderson, Roy's Flooring, and Sports Surfacing (and possibly Koster) scheduled and conducted a meeting "to discuss what needed to be done to effectuate repairs or replacement of the flooring." (Doc. No. 31-2 at 265–66.) "It was determined at the meeting that core samples and analysis testing was necessary in order to ascertain the cause of the failure, the extent of the damage[,] and the best method for correcting the problem." (*Id.* at 266.) After samples were taken and tests were conducted, it was revealed that an insufficient layer of Koster sealant was applied, causing moisture to permeate through to the floor and causing it to fail. (*Id.* at 261, 266.) "The only recommended means to remedy the condition [wa]s to remove the floor and sealant, re-level the

floor and replace the flooring." (*Id.* at 261.)

On November 8, 2016, counsel for Anderson reached out to Roy's Flooring, Sports Surfacing, and Koster via letters to notify them that CSU Bakersfield "ha[d] made a final demand on Anderson to commence the requisite corrective action . . . and to do so during the next semester break scheduled for December 15, 2016 through January 22, 2017." (*Id.* at 261–62, 266.) Anderson in turn demanded that Roy's Flooring and its subcontractors, including Sports Surfacing, "confirm [their] respective intent and ability to immediately proceed with the removal and replacement of the defective flooring during the suggested period noted above or to refund to Anderson all sums previously paid to [them] . . . for the defective flooring." (*Id.* at 262.) Anderson's letter warned Roy's Flooring and Sport Surfacing that their failure to timely comply with its demand would result in Anderson "undertak[ing] its own corrective action through an alternate subcontractor and suppliers and . . . seek[ing] to recover all expenses and damages caused by [their] refusal to perform that corrective work . . . ." (*Id.*)

Ultimately, however, CSU Bakersfield removed and replaced the entire flooring in the Student Recreation Center's fitness room, and thereafter back-charged Anderson in the amount of $229,345.71 for the costs that it incurred in doing so. (*Id.* at 395.) On July 19, 2017, Anderson sent another letter to Roy's Flooring, Sports Surfacing, and Koster, demanding that they reimburse Anderson for the amount that CSU Bakersfield had back-charged it. (*Id.*) On October 24, 2017, Anderson informed Roy's Flooring, Sports Surfacing, and Koster by way of another letter that it had not received a response to its July 19, 2017 correspondence and that it planned on filing a lawsuit against the subcontractors within the next ten days unless payment was received by Anderson within that timeframe. (*Id.* at 398.)

**C.     The Underlying State Court Action and Subsequent Tenders to EMC.**

On November 16, 2017, defendant Anderson filed suit against Roy's Flooring, Sports Surfacing, and Koster in Kern County Superior Court, asserting claims for breach of contract, breaches of express and limited liability, and negligence (the "underlying action" or "Anderson Action"). (*See* Doc. No. 31-2, Ex. 18.) The complaint in the Anderson Action alleges that "core samples, testing and analysis of the . . . Flooring were conducted . . . [and] [t]he results . . .

5

determined that an insufficient layer of the Koster sealer was applied to the concrete floor of the . . . Fitness Room which allowed and caused moisture to permeate through to the floor causing the adhesive to fail to remain bonded to the rubber flooring." (Doc. No. 31-2 at 448.) The state court complaint further alleges that "the primary causes of the above-described failure were . . . [t]he Koster sealer layer was not applied thick enough or continuous enough to perform as an effective moisture mitigation membrane [and] . . . the acrylic adhesive likely never cured effectively and did not develop initial bond strength." (*Id.* at 452.) Anderson seeks compensatory damages in the sum of $229,345.71, an award of consequential, incidental, and/or other appropriate damages in amounts according to proof, and an award of costs of suit. (*Id.* at 461.)

On March 20, 2018, Sports Surfacing tendered the underlying action to EMC for a defense and indemnification under the EMC insurance policies, and on April 12, 2018, Navigators, as insurer for Roy's Flooring, tendered Roy's Flooring's defense in the Anderson Action to EMC, contending that Roy's Flooring was an "additional insured" under the EMC insurance policies issued to Sports Surfacing. (Doc. Nos. 31 at 20; 31-2 at 293.) By way of letters dated August 8 and 17, 2018, EMC declined to defend both Sports Surfacing and Roy's Flooring in the Anderson Action. (*See* Doc. No. 31-2, Exs. 19 –21.) As relevant here, EMC argued that, "[t]o the extent Anderson asserts any claims against [Sports Surfacing or Roy's Flooring in the Anderson Action], those claims are for the costs that [CSU Bakersfield] 'back charged' to Anderson for the purpose of correcting [Sports Surfacing and/or Roy's Flooring's] defective flooring work or products." (Doc. No. 31-2 at 494, 515, 536.) EMC argued that these costs are not for "property damage" as that term is defined in the EMC insurance policies. (*Id.*) Moreover, EMC argued that, even if the costs incurred by CSU Bakersfield in removing and replacing the defective flooring constituted "property damage" as that term is defined in the EMC insurance policies, the "Damage to Your Product" and "Damage to Your Work" exclusions in those policies also negate coverage. (*Id.* at 501–03, 516–17, 537–39.) Accordingly, EMC requested that Sports Surfacing and Roy's Flooring withdraw their coverage requests and reserved all of its legal and equitable rights in connection with the matter, including its right to

initiate a declaratory judgment action if necessary. (*Id.* at 507, 528, 551.)

**D.     The EMC Insurance Policies.**

EMC issued commercial general liability and commercial umbrella policies to Sports Surfacing (the "CGL policies" and the "umbrella policies," respectively) (collectively, the "EMC insurance policies").[4] The EMC insurance policies were first issued in 2008 and renewed in 2009, 2010, and 2011. (UF at ¶¶ 1–16.)

    1.     The CGL Policies.

The CGL policies state in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply.

(Doc. No. 31-2 at 25, 89.) As relevant here, the CGL policies define "property damage" as

> Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or . . . Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(*Id.* at 39, 103.) The CGL policies, however, explicitly "do[] not apply to":

> **k. Damage To Your Product**
> "Property damage" to "your product" arising out of it or any part of it.
>
> **l. Damage To Your Work**
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

(*Id.* at 26–29, 90–93.) The CGL policies define "your product," "your work," and "products-completed operations hazard" as follows:

---

[4] EMC issued CGL and umbrella policies to both defendants Sports Surfacing, Inc. and North American Specialty Flooring, Inc. A total of four CGL and four umbrella policies were issued to each of these defendants. (*See* UF at ¶¶ 1–16.) The policies "were issued on the same coverage form" (Doc. No. 31 at 9, 12) and contain the same or similar language in the provisions that are relevant to this action.

7

      **21.** "Your product":

        a. Means:
          (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
            (a) You;

. . .

        b. Includes:
          (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
          (2) The providing of or failure to provide warnings or instructions.

      **22.** "Your work":

        a. Means:
          (1) Work or operations performed by your or on your behalf; and
          (2) Materials, parts, or equipment furnished in connection with such work or operations.

        b. Includes:
          (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and
          (2) The providing of or failure to provide warnings or instructions.

. . .

      **16.** "Products-completed operations hazard":

        a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or your work" . . . .

(*Id.* at 39–40, 103–04.)

    2.    <u>The Umbrella Policies.</u>

    EMC also issued Sports Surfacing "umbrella" policies, which provide that EMC "will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of . . . 'property damage' to which this insurance applies." (*Id.* at 166, 215.) In essence, these policies are meant to provide coverage "when the 'underlying insurance' does not provide coverage or the limits of any 'underlying insurance' have been exhausted." (*Id.*) However, similar to the CGL policies, the umbrella policies also contain language that EMC "will have no duty to defend the insured against any 'suit' seeking damages for . . . 'property damage' to which this insurance does

not apply." (*Id.*) Moreover, like the CGL policies, the umbrella policies exclude from coverage "Damage to Your Product" and "Damage to Your Work." (*Id.* at 132–140, 187–89.) The umbrella policies define "property damage," "your product," "your work," and "products-completed operations hazard" in the same way as the CGL policies define these terms. (*Id.* at 150–53, 199–202.)[5]

**E.     This Action and the Pending Motion for Summary Judgment.**

On April 26, 2019, EMC commenced this declaratory judgment action as a response to Sports Surfacing and Navigators tendering the claims asserted against Sports Surfacing and Roy's Flooring in the underlying action to EMC for defense and indemnity. (Doc. No. 1.) On June 4, 2019, Sports Surfacing answered and counterclaimed for declaratory relief, seeking a declaration that the claims made against in the underlying action are covered under the terms of the EMC insurance policies. (Doc. No. 16.) On October 4, 2019, EMC filed the pending motion for summary judgment. (Doc. No. 31.) On October 22, 2019, Sports Surfacing filed its opposition, and, on October 28, 2019, EMC filed its reply thereto. (Doc. Nos. 32, 34.)

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including

---

[5] The EMC insurance policies also contain provisions that expand coverage to include additional insureds, provisions that Navigators relied on when it tendered Roy's Flooring's defense to EMC. As discussed in this order, however, the court concludes that EMC is not obligated to defend Sports Surfacing in the underlying action pursuant to any of the EMC insurance policies. It follows then, that if Sports Surfacing as the insured is owed no duty of defense by EMC, neither is any additional insured under the EMC insurance policies. Roy's Flooring does not argue to the contrary, and in fact has agreed to be bound by the outcome of this action. Accordingly, the court need not and will not review or analyze the additional insured provisions in the EMC insurance policies.

9

depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be

drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Undisputed facts are taken as true for purposes of a motion for summary judgment. *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 745 (9th Cir. 2010). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . .. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

**ANALYSIS**

EMC moves for summary judgment, arguing that the undisputed evidence before the court establishes that it owes no duty to defend or indemnify Sports Surfacing in the Anderson Action because: (1) the damages claimed in the underlying action are not for "property damage," as defined by the EMC insurance policies; and (2), even if the damages claimed were for "property damage," the EMC insurance policies' "Damage to Your Product" and "Damage to Your Work" exclusions preclude coverage. (Doc. No. 31 at 24–31.) In opposition, Sports Surfacing contends that: (1) because a potential for coverage exists under the EMC insurance policies, EMC is obligated to defend it in the Anderson Action; and (2) this court should decline to exercise its jurisdiction in this matter. (Doc. No. 32 at 6–14.)

**A.  EMC is Not Obligated to Defend or Indemnify Sports Surfacing in the Anderson Action.**

    1.    <u>Choice of Law.</u>

Because the EMC insurance policies do not contain "choice of law" provisions, and because they were issued in the State of Illinois, the court must determine which state's law applies in resolving the pending motion. "In an ordinary diversity case, federal courts apply the substantive law of the forum in which the court is located, including the forum's choice of law rules." *Ins. Co. of N. Am. v. Fed. Exp. Corp.*, 189 F.3d 914, 919 (9th Cir. 1999). "In contract law, California has two different choice-of-law tests, either of which may apply to this action." *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1197 (S.D. Cal. 2007). The first choice-of-law test is California Civil Code § 1646, which states that "[a] contract is to be

interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." *See also Costco Wholesale*, 472 F. Supp. 2d at 1197. The second choice-of-law test is the common law "governmental interest analysis," under which the "the trial court may analyze the governmental interests of the various jurisdictions involved to select the most appropriate law.'" *Genesis Ins. Co. v. BRE Properties*, 916 F. Supp. 2d 1058, 1065 (N.D. Cal. 2013) (quoting *Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906, 915, 103 (2001). However, a court need not apply either test where no material conflict exists between the laws of the states involved. *See, e.g.*, *Axis Reinsurance Co.*, 913 F. Supp. 2d at 800 ("[C]ourts need not engage in a section 1646 choice-of-law analysis where there is no material conflict between the laws of the states involved."); *M.D. Sass Inv'rs Servs., Inc. v. Reliance Ins. Co. of Illinois*, 810 F. Supp. 1082, 1086 (N.D. Cal. 1992) (Addressing the "governmental interest analysis" and noting that "there is no conflict in applying California law to a dispute if the same outcome would be reached under the law of each of the states involved"); *Genesis Ins. Co.*, 916 F. Supp. 2d at 1065 ("[W]here there is no application of California's choice of law rules, the law of the forum state applies.").

Here, neither party has pointed to a material conflict between the laws of California and Illinois that would trigger application of either test. Indeed, in the pending motion, EMC notes that "the law of California and Illinois regarding interpretation of the coverage issues involved in this matter do not conflict." (Doc. No. 31 at 23.) Sports Surfacing does not dispute this assertion and, in opposing the pending motion, has relied exclusively on California law. (*See* Doc. No. 32.) Moreover, at the December 3, 2019 hearing on the pending motion, neither party objected to the court applying California law in resolving the pending motion. Accordingly, the court will apply California law in this case. *Hurtado v. Superior Court*, 11 Cal. 3d 574, 582, 522 P.2d 666, 671 (1974) ("[W]e hold that where as here in a California action both this state as the forum and a foreign state (or country) are potentially concerned in a question of choice of law . . . and it appears that the foreign state (or country) has no interest whatsoever in having its own law applied, California as the forum should apply California law.").

/////

### 2. Duty to Defend or Indemnify in the Underlying Action.

"It is . . . a familiar principle that a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993), *as modified on denial of reh'g* (May 13, 1993). "[T]he [insurer] must defend a suit which *potentially* seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966). "The determination [of] whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Horace Mann*, 4 Cal. 4th at 1081. In analyzing an insurance policy, "courts must consider both the [] language in the policy, and the endorsements or exclusions affecting coverage, if any, included in the policy terms." *Modern Dev. Co. v. Navigators Ins. Co.*, 111 Cal. App. 4th 932, 939 (2003), *as modified* (Aug. 29, 2003), *as further modified* (Sept. 18, 2003). "Facts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 296 (1993).

To prevail in an action for declaratory relief regarding the duty to defend, "the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*." *Id.* at 300; *see also Reg'l Steel Corp. v. Liberty Surplus Ins. Corp.*, 226 Cal. App. 4th 1377, 1389 (2014) ("The insurer's defense duty is obviated where the facts are undisputed and conclusively eliminate the potential the policy provides coverage for the third party's claim.") "Facts merely tending to show that the claim is not covered or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage . . . add no weight to the scales." *Montrose Chem.*, 6 Cal. 4th at 300. Accordingly, for Sports Surfacing to survive summary judgment here, it must show that the underlying claims may fall within the coverage of the policy. *Montrose Chem.*, 6 Cal. 4th at 300. EMC, on the other hand, "is entitled to summary judgment that no potential for indemnity exists if the evidence establishes no coverage under the policy as a matter of law." *Reg'l Steel*, 226 Cal. App. 4th at 1389; *see also Am. Star Ins. Co. v. Ins. Co. of the W.*, 232 Cal. App. 3d 1320, 1325 (1991) ("If the claim does not fall within the insuring clauses, there

is no need to analyze further.  There is no coverage.") (citations omitted).

As relevant here, the EMC insurance policies provide Sports Surfacing with coverage for "property damage."  EMC contends that it is not obligated to defend or indemnify Sports Surfacing in the underlying state court action because the damages claimed in that underlying action do not constitute property damage as defined by the EMC insurance policies.  For the reasons explained below, the court agrees.

### a. *The Anderson Action Does Not Seek Damages for "Property Damage."*

The EMC insurance policies define property damage as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured."  (Doc. No. 31-2 at 39, 103.)  In the underlying state court action, however, Anderson is not seeking damages for physical injury to tangible property or loss of use of property.  The Anderson Action asserts claims for breach of contract, negligence, breach of express and implied warranties, and "strict liability."  (Doc. No. 31-2, Ex. 18.)  Moreover, the allegations of the complaint in that action do not claim that Sports Surfacing's actions or inactions lead to physical injury to tangible property or loss of use of that property.  Instead, the complaint in the Anderson Action alleges that an "insufficient layer of the Koster sealer was applied [by Sports Surfacing] to the concrete floor of the Rec Center Fitness Room which allowed and caused moisture to permeate through to the floor causing the adhesive to fail to remain bonded to the rubber flooring."[6]  (Doc. No. 31-2 at 448.)  The only damages sought by Anderson in that underlying action are for the $229,345.71 that CSU Bakersfield back-charged Anderson after CSU Bakersfield demolished, removed, and replaced the defective flooring that Sports Surfacing installed in the college's fitness room.

A claim to recover expenses incurred to replace defectively installed flooring is not, however, a claim for "property damage."  In California, "the prevailing view is that the

---

[6] Sports Surfacing does not materially dispute these facts.  Indeed, in its opposition to the pending motion, it concedes that "Roy's Flooring engaged Sports Surfacing to obtain a Koster sealer, which Sports Surfacing did.  Sports Surfacing prepared the surface of the concrete floor and applied the Koster sealer under the supervision of a Koster representative.  Sports Surfacing then prepared and installed a supply rubber floor . . .."  (Doc. No. 32 at 5.)

14

incorporation of a defective component or product into a larger structure does not constitute property damage unless and until the defective component causes physical injury to tangible property in at least some other part of the system." *F & H Constr. v. ITT Hartford Ins. Co.*, 118 Cal. App. 4th 364, 372 (2004). Consequently, "property damage is not established by the mere failure of a defective product to perform as intended. Nor is it established by economic losses such as the diminution in value of the structure or the cost to repair a defective product structure." *Id.* (citation omitted). These principles are in keeping with the basic purpose of CGL policies, which

> are not designed to provide contractors and developers with coverage against claims their work is inferior or defective. The risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer. Rather liability coverage comes into play when the insured's defective materials or work cause injury to property other than the insured's own work or products.

*Id.* at 373 (citations and internal quotation marks omitted). "In short, a liability insurance policy is not designed to serve as a performance bond or warranty of a contractor's product." *Id.* (citations omitted).

Here, the undisputed facts on summary judgment establish that the damages claimed by Anderson in the underlying state court action "resulted from the *remediation* of the [fitness room], and remediation work does not constitute property damage under California law." *Am. Home Assurance Co. v. SMG Stone Co., Inc.*, 119 F. Supp. 3d 1053, 1060 (N.D. Cal. 2015); *see also Reg'l Steel*, 226 Cal. App. 4th at 1393 ("California cases consistently hold that coverage does not exist where the only property 'damage' is the defective construction, and damage to *other* property has not occurred.").[7] The court therefore concludes that as a matter of law the damages claimed in the underlying action do not constitute property damage as defined by the EMC insurance policies.

---

[7] Sports Surfacing's contention that there is a potential for coverage under the EMC policies because CSU Bakersfield back-charged Anderson $9,125.00 for "moving of equipment" similarly fails. (Doc. No. 32 at 7.) First, Sports Surfacing provides no authority indicating that the "moving of equipment" constitutes property damage, as defined by the EMC policies. Second, and more importantly, CSU Bakersfield had to move that equipment in order to fix the defective flooring. Accordingly, those costs are part of the remediation costs, not independent of them.

15

Sports Surfacing attempts to circumvent this conclusion by contending that "[t]he state court complaint is at best ambiguous as to whether it alleges [a claim for] property damage." (Doc. No. 32 at 7.) In support of its argument in this regard, Sport Surfacing directs the courts attention to paragraph 22 of the complaint in the Anderson Action, claiming that it seeks damages for "loss of past, present and/or future use." (*Id.*) Sports Surfacing, however, misreads that paragraph of the complaint. Paragraph 22 of the state court complaint does *not* identify the damages that Anderson is seeking in the underlying action; that paragraph simply recites that, after discovery of the flooring defects, *CSU Bakersfield* "notified [Anderson] of those defects and failures and claimed and demanded that [Anderson] correct the latent defects and reimburse [CSU Bakersfield] for any loss of past, present, and/or future use and diminution in value of the Rec Center Fitness Room's Flooring System caused by the occurrence of the latent defects and failures." (Doc. No. 31-2 at 449.) Of course, it is not surprising that CSU Bakersfield, upon discovering the defects in the flooring, demanded that its general contractor (Anderson) make it whole, and in doing so anticipated damages based on loss of use or diminution in value of the fitness room. Notably missing from the state court complaint, however, is any allegation that CSU Bakersfield *did* in fact recover damages from Anderson for "any loss of past, present, and/or future use" of the fitness room. Indeed, as discussed, the Anderson Action only seeks damages to recover reimbursement of the sum of $229,345.71 "for the cost of the testing, removal and replacement of the failed flooring." (*Id.* at 448.) Finally, the court notes that, CSU Bakersfield has not sued Anderson or any subcontractor that worked on the Student Recreation Center project for "property damage" to that facility. CSU Bakersfield sought and received reimbursement from Anderson for the costs to repair the defects, and Anderson has thereafter sought reimbursement from Sports Surfacing and the other subcontractors for those same costs. There is simply no allegation in the Anderson Action that the damages sought by Anderson therein are for "property damage" as that term is defined by the EMC insurance policies.

Finally, Sports Surfacing contends that, "while the cost of repairing or replacing the insured's defective work may not be covered, damage to any other portion of the building would be covered." (Doc. No. 32 at 7.) It argues that this court cannot yet determine whether a

potential for coverage exists under the EMC insurance policies because "the underlying claim will ultimately be determined in the state court action." (*Id.*) Sports Surfacing's argument in this regard has already been addressed. As noted above, Sports Surfacing "must prove the existence of a potential for coverage," *Montrose Chem. Corp.*, 6 Cal. 4th at 300, which is done "by comparing the allegations of the complaint with the terms of the policy," *Horace Mann*, 4 Cal. 4th at 1081. However, save for the single reference to potential ambiguity in the complaint in the Anderson Action (which the court has already addressed and rejected), Sports Surfacing's opposition is completely bereft of any facts or argument that would create a potential for EMC to cover it in that action.

Having determined that the damages claimed in the underlying action do not constitute property damage, the court finds that there is no genuine dispute as to whether or not the EMC insurance policies cover the causes of action asserted against Sports Surfacing in the underlying state court action. The court will therefore grant EMC's motion for summary judgment seeking a declaration that, pursuant to the EMC insurance policies, it has no duty to defend or indemnify Sports Surfacing in the underlying action. Moreover, having determined that the damages claimed in the underlying action do not fall within the scope of the EMC insurance policies, the court need not and will not analyze whether the policies' "Damage to Your Product" or "Damage to Your Work" exclusions are applicable to the underlying action.

**B.     The Court Will Not Decline to Exercise its Jurisdiction over this Matter.**

Finally, the court addresses Sports Surfacing's argument that this court should decline to exercise its jurisdiction under the Federal Declaratory Judgment Act because "jurisdiction is expressly discretionary" and there is a "strong preference for having a state court, where the underlying action is filed and pending, adjudicate a declaratory relief action for coverage as well." (Doc. No. 32 at 4, 8.) Essentially, Sports Surfacing argues that, because the Anderson Action is pending in state court, this federal court should not exercise its jurisdiction in this declaratory action. EMC describes this argument as an "unmeritorious, hail-Mary procedural argument." (Doc. No. 34 at 4.) However it may be characterized, the court finds this argument advanced by EMC to be unpersuasive.

In *Government Employees Insurance Company v. Dizol*, 133 F.3d 1220 (9th Cir. 1998), the Ninth Circuit noted that the factors outlined by the Supreme Court in *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942), "remain the philosophic touchstone for the district court" when determining whether it should exercise its jurisdiction in a declaratory judgment action. 133 F.3d at 1225. Specifically, the court in *Dizol* noted that:

> The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation. If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court. The pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief. Nonetheless, federal courts should generally decline to entertain reactive declaratory actions.
>
> However, there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically. We know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage . . ..
>
> But these are considerations for the district court, which is in the best position to assess how judicial economy, comity and federalism are affected in a given case.

*Id.* at 1225–26 (internal quotation marks and citations omitted).

The court finds that consideration of the *Brillhart* factors do not compel this court to decline to exercise its jurisdiction in this case. While this action involves a question of state law, there is no indication that EMC is forum-shopping by seeking declaratory relief in this court, or that entering judgment in favor of EMC in this action would result in duplicative litigation. Indeed, EMC is not even a party to the Anderson Action, and the coverage questions presented in this action are not at issue in the Anderson Action. Accordingly, this court's conclusion that EMC is not obligated to defend or indemnify Sports Surfacing with respect to the Anderson Action will not resolve or in any way affect Anderson's claim that Sports Surfacing is liable to it for the repair costs that CSU Bakersfield back charged to Anderson.

Moreover, it appears that Sports Surfacing's argument may be brought in bad faith. As noted above, Sports Surfacing has counterclaimed for declaratory relief, seeking a declaration that

18

the claims alleged against it in the underlying action are covered under the relevant provisions of the EMC insurance policies. (*See* Doc. No. 16.) It is therefore odd that Sports Surfacing asks this court to not exercise its jurisdiction, given that it has counterclaimed for declaratory relief itself. Moreover, the timing of Sports Surfacing's argument compounds the court's concern that it may not be brought in good faith. To argue now—*after* discovery has closed and *after* EMC has brought a motion for summary judgment—that this court should decline to exercise its jurisdiction under the *Brillhart* factors appears likely to be nothing more than an attempt to preclude this court from ruling in EMC's favor.[8] *See, e.g.*, *Dizol*, 133 F.3d at 1225 ("Parties may no longer crouch in the underbrush, poised for the opportunity to interpose a discretionary jurisdictional objection at the first hint of adversity.").

Indeed, attached to EMC's reply to Sports Surfacing's opposition to the pending motion is EMC attorney Lisa Darling-Alderton's declaration, which further supports the court's concern that Sports Surfacing's request may be brought in bad faith. Therein, attorney Darling-Alderton avers that the parties—including Sport Surfacing, by and through its counsel in this matter, attorney Arthur Grebow—"agreed [in June of 2019] to continue the trial in the Anderson Litigation to January or February 2020 to allow time for the coverage issue to be decided via MSJ in the Federal Court." (Doc. No. 34-1 ("Darling Decl.") at ¶ 5.) Attorney Darling-Alderton also declares that, during "a conference call with all parties to this action for purposes of the Rule 26f meeting and preparation of the joint report[,] . . . Mr. Grebow insisted that we include a date certain for the motion for summary judgment in this action, so that the coverage issue would be decided before trial commenced in the Anderson Action in January of 2020." (Darling Decl. at ¶ 7.) Attorney Darling-Alderton further declares that between July of 2019 to when Sports Surfacing filed its opposition to the pending motion, attorney Grebow never indicated that he intended on filing a motion or opposition contesting this court's jurisdiction. (*Id.* at ¶¶ 7–14.) It therefore appears clear that the parties in the underlying action agreed to postpone trial in that

---

[8] The court further notes that, to the extent that Sports Surfacing sought to dismiss or stay this action based on the application of the *Brillhart* factors, it should have done so by way of a motion, and not in its opposition to EMC's motion for summary judgment.

19

action so that this federal court could resolve the coverage issues well before trial.  (*Id.* at ¶ 5 ("Anderson wanted the coverage issue to be decided before proceeding with mediation or trial, for the obvious reason that having an insurer possibly participate in the mediation would [] impact those discussions.").)

Accordingly, the court will not decline to exercise its jurisdiction over this matter.

## CONCLUSION

For the reasons set forth above, EMC's motion for summary judgment (Doc. No. 31) is granted and the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  **December 27, 2019**

UNITED STATES DISTRICT JUDGE